UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


XO HEALTH, LLC,

     Plaintiff,

v.                                   Case No: 6:25-cv-1005-JSS-RMN

FOUNTAIN HEALTH INSURANCE,
INC. and FOUNTAIN HEALTH,
LLC,

     Defendants.
_____/

## ORDER

Defendants, Fountain Health, LLC (Fountain Health) and Fountain Health Insurance, Inc. (FHI), move to dismiss the complaint for failure to state a claim. (Dkt. 9.) Plaintiff, XO Health, LLC, opposes the motion. (Dkt. 13.) The magistrate judge assigned to this case recommends that the motion be granted in part and denied in part. (Dkt. 27.) Plaintiff does not object to the recommendation. (*See* Dkt. 29.) Defendants object in part. (*See* Dkt. 28.) Upon consideration, and for the reasons outlined below, the court largely overrules Defendants' objections to the magistrate judge's recommendation and grants the motion to dismiss in part.

## BACKGROUND

Plaintiff is a reference-based pricing (RBP) company that helps employer self-

funded ERISA[1] health plans manage their costs.  (*See* Dkt. 1 ¶¶ 1, 6, 8, 12.)  According to the complaint, RBP health insurance plans do not use a specific network of providers.  (*See id.* ¶ 9.)  Instead, these plans reimburse providers approximately the same amount, no matter who a plan member sees.  (*See id.*)  Plaintiff "negotiates the resolution of healthcare claims" under these plans.  (*Id.* ¶ 14.)

FHI is an affiliate of Fountain Health.  (*Id.* ¶ 25.)  It is a health services provider that serves employers who offer certain self-funded RBP plans.  (*See id.* ¶ 12.)  In July 2022, FHI hired Plaintiff to negotiate claims on behalf of its clients.  (*See id.* ¶ 15.)  For each claim that it settled, Plaintiff received a fee equal to ten percent of the original bill.  (*Id.*)  FHI did not pay these fees directly.  (*See id.* ¶ 16.)  Rather, the company that managed its client's healthcare plans, American Plan Administrators (APA), sent FHI monthly invoices for various expenses, including Plaintiff's RBP fees.  (*See id.*)  FHI then collected the funds to pay APA, which, in turn, paid Plaintiff.  (*See id.*)

In addition to negotiating claims, Plaintiff also provided "non-RBP services" for FHI pursuant to a consulting agreement.  (*See id.* ¶ 22.)  For these services, FHI purportedly paid Plaintiff $15,000 each month.  (*See id.*)  Unlike Plaintiff's RBP fees, Defendants directly paid Plaintiff's consulting fees.  (*See id.*)

In February 2023, FHI began scrutinizing its relationship with Plaintiff.  (*See id.* ¶¶ 23–24.)  To increase its oversight of Plaintiff's billing, FHI allegedly proposed paying all of Plaintiff's fees directly, as it did under the consulting agreement.  (*See id.*

---

[1]  The Employment Retirement Income Security Act of 1974 is a federal law that establishes requirements for most voluntary private sector benefit plans.

¶ 24.)  Ultimately, the parties failed to reach a compromise and instead agreed to terminate the consulting agreement and "all related agreements between . . . the [p]arties."  (Dkt. 9-1 at 2[2]; *see* Dkt. 1 ¶ 26.)  Under the settlement agreement, FHI promised to pay Plaintiff $10,000, while several other entities, including APA, agreed to reimburse Plaintiff approximately $90,000.  (Dkt. 9-1 at 1.)  The agreement further states that:

> Fountain Health acknowledges and *agrees* that each third[-]party administrator of [its] customers' self-funded . . . healthcare benefit plan shall pay all referenced based pricing fees owed to [Plaintiff] directly to [Plaintiff] for all dates of service that occurred on or before October 1, 2023, and *Fountain Health shall not interfere with any such third party administrator's payments thereof or cause any such third party administrator not to make or delay any such payments directly to [Plaintiff].*

(*Id.* at 1–2 (emphasis added).)  Fountain Health agreed to pay its portion of the settlement both within three days of the agreement's execution and on October 1, 2023.  (*See id.*)  Plaintiff agreed to notify APA that it was to pay Plaintiff for all "dates of services that occurred on or before October 1, 2023."  (*Id.*)

Accordingly, APA continued to submit funding requests for Plaintiff's RBP fees.  (Dkt. 1 ¶ 29.)  Defendants purportedly collected the funds from their clients but

---

[2] When considering a motion to dismiss, the court "may properly consider a document not . . . attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims[] and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  Plaintiff references the parties' settlement agreement throughout its complaint, (*see* Dkt. 1 ¶¶ 25–32, 42–54), and calls the agreement an exhibit, (*see id.* at 7 n.2).  The agreement is central to several of Plaintiff's causes of action, including its breach of contract claim, (*see id. passim*), and its authenticity appears uncontested, as it is attached to Defendants' motion and cited throughout, (*see* Dkts. 9, 9-1).  As a result, the court considers the agreement as incorporated by reference in the complaint.  *See Johnson*, 107 F.4th at 1300.

withheld them from APA.  (*See id.* ¶¶ 29, 38–39.)  According to the complaint, Defendants kept the funds to "determine how [they] should be distributed," thereby preventing APA from paying Plaintiff.  (*Id.* ¶¶ 39, 41.)

The complaint asserts five causes of action.  (*See id*. ¶¶ 46–79.)  In Count I, Plaintiff alleges that Defendants breached the settlement agreement by interfering with APA's attempts to pay Plaintiff the RBP fees.  (*See id*. ¶¶ 46–54.)  In Count II, Plaintiff claims that Defendants fraudulently induced its ascent to the agreement by misrepresenting their intent to comply with the non-interference provision.  (*See id*. ¶¶ 55–60.)  In Count III, Plaintiff asserts a cause of action for "money had and money received," which states that Defendants continue to possess Plaintiff's RBP funds.  (*See id*. ¶¶ 61–63.)  In Count IV, Plaintiff contends that Defendants have converted its RBP fees by refusing to pay APA, thereby depriving Plaintiff of the funds.  (*See id*. ¶¶ 64–70.)  Finally, in Count V, Plaintiff alleges that Defendants' continued retention of the RBP fees constitutes a civil theft.  (*See id*. ¶¶ 71–79.)  Plaintiffs seek statutory, compensatory, and punitive damages.  (*See id*. at 16–17.)  They alternatively seek rescission of the parties' settlement agreement and "fraud damages."  (*Id.* at 17.)

Defendant moves to dismiss Counts I, III, IV, and V of the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 9.)  The magistrate judge recommends that the court grant Defendant's motion to dismiss Counts III and IV, and deny the motion as to Counts I and V.  (*See* Dkt. 27 at 6.)  Plaintiff does not object to the recommendation.  (*See* Dkt. 29.)  Defendants object to the extent that the magistrate

judge recommends not dismissing Counts I and V.  (*See* Dkt. 28).

## APPLICABLE STANDARDS

After conducting a careful and complete review of the findings and recommendations, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72.  With respect to non-dispositive matters, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020).  For dispositive matters, the district judge must conduct a de novo review of any portion of the report and recommendation to which a timely objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009) ("A district court makes a de novo determination of those portions of a magistrate's report to which objections are filed.").  Even in the absence of a specific objection, the district judge reviews any legal conclusions de novo.  *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).[3]

---

[3] When a party fails to "object to a magistrate judge's findings or recommendations contained in" an R&R "in accordance with the provisions of 28 U.S.C. § 636(b)(1)," the party "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," provided that "the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1. Here, the R&R informed the parties of the time period for objecting and of the consequences for failing to object. (Dkt. 19 at 18–19.)  Absent "a proper objection," a waived challenge is reviewable only "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. Plain-error review "rarely applies in civil cases." *Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011). When plain-error review does apply, it "require[s] a greater showing of

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). For a complaint to state a claim for relief, it "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendant[] gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who,

---

error than in criminal appeals." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017), *abrogated on other grounds by Bostock v. Clayton County*, 590 U.S. 644 (2020).

what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)).

## ANALYSIS

To start, Defendants move to dismiss the complaint in its entirety, citing "the broad release language in the [s]ettlement [a]greement." (Dkt. 9 at 11–14.) The magistrate judge recommends that the court deny Defendants' motion to dismiss on this basis because Plaintiff's claims emanate from Defendants' alleged breach of the settlement agreement, as opposed to the underlying consulting agreement. (*See* Dkt. 27 at 6–8.) Defendants do not object; accordingly, the court accepts the magistrate judge's recommendation on this issue. (*See* Dkt. 27 at 8.)

Defendants did not move to dismiss Count II. (*See* Dkt. 9.) Accordingly, the magistrate judge recommends that the court allow Plaintiff to proceed on its fraudulent inducement claim. (*See* Dkt. 27 at 7 n.6.) The court agrees and accepts the magistrate judge's recommendation on this issue.

As to Count III, Defendants contend that Plaintiff's claim for money had and money received should be dismissed, as such a claim is generally unavailable where a contract governs the parties' obligations. (*See* Dkt. 9 at 22–23.) The magistrate judge agrees and recommends that Count III be dismissed because "Texas caselaw is clear that where a party affirmatively pleads that a valid written contract covers the . . . dispute, there can be no recovery under a quasi-contract theory." (*See* Dkt. 27

at 12–13.)  Additionally, as to Count IV, Defendants argue that Plaintiff's claim for conversion should be dismissed because Plaintiff has not, among other things, identified the specific money that is at issue.  (*See* Dkt. 9 at 23–26.)  The magistrate judge agrees and recommends that Count IV be dismissed because Plaintiff does not allege that the money at issue "constitutes 'specific chattel,' which is required.  (*See* Dkt. 27 at 13–16.)   The court accepts and adopts the magistrate judge's recommendation that Counts III and IV be dismissed, (*see id.* at 12–16), as Plaintiff does not object, (*see* Dkt. 29).

As to Count I, Defendants assert that the complaint fails to state a claim for breach of contract, as Plaintiff does not allege that Defendants breached an operative provision of the settlement agreement.  (Dkt. 9 at 14–17.)  Defendants further argue that Count I should be dismissed because Plaintiff was not entitled to receive the fee payments at issue, as its requests were untimely.  (*See id.* at 18–22.)  The magistrate judge recommends that the court deny Defendants' motion to dismiss Count I because the complaint sufficiently alleges that Defendants breached the settlement agreement and because Defendants have not identified a term of the agreement that required Plaintiff to submit its claims to APA by a particular date.  (*See* Dkt. 27 at 9–12.)

As to Count V, Defendants contend that Plaintiff's civil theft claim should be dismissed because it restates Plaintiff's breach of contract claim without sufficiently alleging that Defendants acted with the intent to commit theft.  (*See* Dkt. 9 at 26–28.)  The magistrate judge recommends that the court deny Defendants' motion to dismiss Count V, as the parties' contractual relationship does not bar such a claim under

Florida law, and because Plaintiff sufficiently alleges that Defendants acted with the intent to commit theft. (*See* Dkt. 27 at 16–18.)

Defendants object to the magistrate judge's recommendations as to Counts I and V. The court limits its discussion to those counts and addresses them in turn.

**A. Count I**

Count I alleges that Defendants breached the settlement agreement when they "interfered with or caused APA not to pay" Plaintiff's RBP fees. (Dkt. 1 ¶¶ 46–54.) Settlement agreements are contracts. *Scott v. Livingston*, 628 F. App'x 900, 902 (5th Cir. 2015). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App. 2005).

The parties' settlement agreement is governed by Texas law. (*See* Dkt. 9-1 at 5 ("This [a]greement shall be governed, enforced, construed[,] and interpreted solely in accordance with the laws of the [s]tate of Texas."). In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract[,] (2) performance or tendered performance by the plaintiff[,] (3) breach of the contract by the defendant[,] and (4) damages sustained by the plaintiff as a result of the breach." *Brooks v. Mut. of Omaha Ins. Co.*, 853 F. App'x 943, 944 (5th Cir. 2021) (quotation omitted). "A breach occurs when a party fails or refuses to do something [that it] has promised to do." *Atrium Med. Ctr., LP v. Hous. Red C LLC*, 546 S.W.3d 305, 311–12 (Tex. App. 2017). The breach need not concern a material term. *Bartush-Schnitzius Foods Co. v. Cimco*

*Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) ("[W]hen a party commits a nonmaterial breach, the other party is not excused from future performance but may sue for the damages caused by the breach.").

In moving to dismiss, Defendants argue that Plaintiff has not identified a material breach of the settlement agreement because its cause of action is premised "exclusively on a non-operative" recital. (*See* Dkt. 9 at 14–17.)  "A recital is a preliminary statement in a contract" that begins with "whereas" and either provides background to the parties' transaction or the reasons for the agreement. *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App. 2011) (alteration adopted and quotations omitted); *accord All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App. 2009) ("A recital is a formal statement or setting forth of some matter of fact, in any . . . writing, in order to explain the reasons upon which the transaction is founded"); *see Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 597 n.4 (Tex. App. 2015) ("The recitals portion of a contract is a preliminary statement explaining the reasons for entering the contract, or the background of the transaction."). Recitals do not establish substantive obligations, *see Mikob Props., Inc.*, 468 S.W.3d at 597 n.4, and thus are "not part of [the] contract unless the parties intend[] them to be," *All Metals Fabricating, Inc.*, 338 S.W.3d at 561; *BCH Dev. Corp. v. Bee Creek Hills Neighborhood Ass'n*, No. 03-96-00416-CV, 1996 WL 727385, at *3 (Tex. App. Dec. 19, 1996) (explaining that recitals "are not actually part of the document unless the parties intended them to be such"). Recitals will not control a contract's

operative clauses unless they are ambiguous. *All Metals Fabricating, Inc.*, 338 S.W.3d at 561.

The magistrate judge noted that Defendants' promise not to interfere with APA's payments may be a recital, since it is located beneath a heading that identifies it as such and precedes a section that begins with the phrase "it is therefore agreed as follows." (Dkt. 27 at 10.) Nevertheless, the magistrate judge also observed that the provision's text "suggests that it may be . . . a binding obligation or . . . a provision clarifying terms that the parties contemplated in the rest of the agreement." (*Id.*) Given this juxtaposition, the magistrate judge recommended that the court deny the motion to dismiss Count I "on the ground that Plaintiff's breach of contract claim relies on a mere recital." (*Id.* at 10.) Defendants raise two objections on this point. (*See* Dkt. 28 at 1–5.)

First, Defendants contend that the non-interference provision cannot clarify later provisions because it is a recital and is not part of the settlement agreement. (*See id.* at 5.) Even if the provision were, as Defendants suggest, a recital, the court could still consider the provision "in determining the proper construction of the contract and the parties['] intent." *See All Metals Fabricating, Inc.*, 338 S.W.3d at 561. For instance, the provision appears to state who is responsible for paying Plaintiff's outstanding RBP fees. (*See* Dkt. 9-1 at 1–2.) Thus, the magistrate judge correctly recognized that the non-interference provision could clarify later provisions. (*See* Dkt. 27 at 10.)

In any case, the provision does not appear to be a recital. Although "headings and titles provide context and can inform the meaning of the sections they label," they

- 11 -

"are not determinative." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015). Thus, when a title or a heading is "inconsistent with the plain meaning of the provision's operative language, [courts] afford greater weight to the operative language." *Id.*; *see Starness v. Guar. Bank*, 634 S.W.2d 325, 329 (Tex. App. 1982) (noting that Texas courts reject interpretations that elevate a contract's form or labels over the substance of the parties' actual agreement); *see also Fischer v. CTMI, LLC*, 479 S.W.3d 231, 239 (Tex. 2016) (explaining that, when interpreting a contract under Texas law, a court "must construe the contract as a whole and evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed it" (quotation omitted)). The non-interference provision does not function as a recital; it does not recite the reasons for the parties' settlement or provide background to their transaction. *See Furmanite Worldwide, Inc.*, 339 S.W.3d at 336; *All Metals Fabricating, Inc.*, 338 S.W.3d at 561. Rather, the provision memorializes Defendants' promise not to prevent, delay, or interfere with APA's attempts to pay Plaintiff's outstanding RBP fees. (*See* Dkt. 9-1 at 1–2 ("[Defendants] *shall not interfere with* . . . [APA's] payments . . . *or cause* . . . [APA] not to make *or delay* any such payments directly to [Plaintiff]." (emphasis added)).)

The use of "shall" further indicates that the provision acts to impose a duty on Defendants. *Shall*, Black's Law Dictionary (12th ed. 2024) (defining "shall" to mean "[h]as a duty to; more broadly, is required to"); *accord Shall*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/shall (explaining that "shall" is "used to express a command or exhortation" and further "used in laws,

regulations, or directives to express what is mandatory") (last visited Mar. 14, 2026); *see Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App. 2007) ("The word 'shall' as used in contracts is generally mandatory, *operating to impose a duty*." (emphasis added)). Interpreting the non-interference provision to impose a duty on Defendants makes sense, as it appears to give effect to the parties' agreement that Plaintiff would receive its RBP fees for services rendered "on or before October 1, 2023," (Dkt. 9-1 at 2), as APA could not pay Plaintiff unless Defendants continued to provide it with the necessary funds, (*see* Dkt. 1 ¶¶ 16–17). *See Proton PRC, Ltd. v. ET & AS Invs., Inc.*, No. 02-21-00258-CV, 2022 WL 488939, at *4 (Tex. App. Feb. 17, 2022) ("Operative language is language that *gives effect to the transaction involved* and operative words are those words that actually effect the transaction." (emphasis added and quotations omitted)). Without Defendants' assurance that they would not interfere, the parties' agreement that APA would continue to pay Plaintiff's outstanding RBP fees appears to be meaningless—a result discouraged by the rules of construction. *See Phoenix Holdings, Ltd. v. Circle C Land Corp.*, 987 S.W.2d 933, 937 (Tex. App. 1999) (explaining that courts must "interpret the contract in its entirety, to harmonize its various provisions, and to *reject where possible an interpretation that would render any provision meaningless* because it is presumed the parties intended each provision to have effect." (emphasis added)). The court therefore agrees with the magistrate judge's conclusion that the non-interference provision "could be a binding obligation." *See All Metals Fabricating, Inc.*, 338 S.W.3d at 560–61 (rejecting the argument that a contractual provision was a recital because it began with the phrase "whereas" and was located at

the outset of the parties' agreement, as the provision did more than provide background for the parties' agreement).  Indeed, reading the provision to impose a duty on Defendants is the more reasonable interpretation of the parties' agreement, as Defendants' interpretation impermissibly prioritizes form over substance.  *See Starness*, 634 S.W.2d at 329; *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 867 (Tex. App. 2003) ("A reasonable interpretation of an agreement will be preferred to one which is unreasonable."); *Solis v. Evins*, 951 S.W.2d 44, 50 (Tex. App. 1997) (explaining that, when interpreting contracts, a court "must attempt to achieve a reasonable result consistent with the apparent intent of the parties").

Second, Defendants argue that the non-interference provision cannot be an operative part of the parties' agreement, as such an interpretation would impose obligations on third parties.  (*See* Dkt. 28 at 4.)  Defendants alluded to this point in their motion to dismiss, but did not provide any analysis or legal authority to support their argument.  (*See* Dkt. 9 at 17.)  Given the brevity of their analysis, Defendants do not explain how the reference to APA's extracontractual obligations negates their promise not to interfere with those obligations.  (*See id.*)  Defendants' objections to the magistrate judge's recommendation are similarly defective.  (*See* Dkt. 28 at 4–5.)  *See Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (explaining that "conclusive[] or general objections need not be considered by the district court.").  Defendants have thus waived this argument, as parties abandon issues that are raised in passing, asserted perfunctorily, buried within their brief, or used merely to support other arguments. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014);

- 14 -

*see United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (concluding that a plaintiff forfeited arguments that were not supported by legal authority). Still, the argument fails, as Defendants' performance, not APA's, is what is at issue in Count I. (*See* Dkt. 1 ¶¶ 46–54.) Thus, privity of contract is satisfied. *See Ridgeway v. MedFinManager, LLC*, 716 S.W.3d 937, 951 (Tex. App. 2025) ("Privity of contract is established by proving that *the defendant was a party to an enforceable contract* with . . . the plaintiff." (emphasis added)); *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App. 2010) ("Privity of contract is established by proving that the defendant was a party to an enforceable contract with either the plaintiff.").

At bottom, Plaintiff has sufficiently pleaded a claim for breach of contract. *See Brooks*, 853 F. App'x at 944. According to the complaint, the parties agreed to terminate their business relationship. (Dkt. 1 ¶¶ 24–28.) Therein, the parties agreed that Plaintiff would receive all outstanding RBP fees for services rendered "on or before October 1, 2023," and that Defendants would not prevent, delay, or interfere with APA's attempts to pay those outstanding fees. (*See* Dkt. 9-1 at 1–2.) Despite this, Defendants allegedly withheld Plaintiff's RBP funds to "determine how [they] should be distributed," thereby preventing APA from paying Plaintiff. (Dkt. 1 ¶¶ 39, 41.) That is sufficient for now. *Rogers v. City of Yoakum*, 660 F. App'x 279, 282 (5th Cir. 2016) (explaining that, to survive a Rule 12(b)(6) motion to dismiss, the complaint need only "plead enough facts to state a claim to relief that is plausible on its face." (quotation omitted)). Accordingly, Defendants' motion to dismiss Count I is denied.

**B. Count V**

Count V asserts a claim for civil theft under Florida law.  (Dkt. 1 ¶¶ 71–79; *see* Dkt. 27 at 16 n.11 ("Although the parties assumed Texas law applied to the other claims, neither party disputes [that] Florida law applies to this count.").)  To state a claim for civil theft, Plaintiff must allege that Defendant "(1) knowingly[,] (2) obtained or used, or endeavored to obtain or use, [Plaintiff's] property[,] (3) with felonious intent[,] (4) to deprive [Plaintiff] of its right to or a benefit from the property or [to] appropriate the property to [Defendants'] own use or to the use of a person not entitled to the use of the property."  *Abdo v. Abdo*, 263 So. 3d 141, 146 (Fla. Dist. Ct. App. 2018); *see Fla. Desk v. Mitchell Int'l*, 817 So. 2d 1059, 1060 (Fla. Dist. Ct. App. 2002) (explaining that to state a claim "for civil theft, the [plaintiff] must prove the statutory elements of theft, as well as criminal intent").

Defendants claim that Count V should be dismissed for two reasons.  (*See* Dkt. 9 at 26–28.)  To start, Defendants argue that Plaintiff's civil theft claim is not sufficiently independent of its breach of contract claim.  (*See id.* at 27.)  The existence of a contractual relationship will not, itself, preclude a claim for civil theft.  *Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. Dist. Ct. App. 2013); *see Escudero v. Hasbun*, 689 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 1997) ("Florida law . . . does not bar a civil theft claim simply because a contractual relationship is involved.").  Rather, a plaintiff may maintain concurrent claims for breach of contract and civil theft if the latter alleges more than "a [mere] failure to comply with the terms of a contract."  *Heldenmuth*, 128

- 16 -

So. 3d at 896.  According to the complaint, Defendants breached the parties' settlement agreement by interfering with or causing APA not to pay Plaintiff's RBP fees.  (*See* Dkt. 1 ¶¶ 29, 41, 50–51.)  The magistrate judge determined that Plaintiff's civil conspiracy claim went one step further, alleging that Defendants collected the funds from their clients, which they now refuse to remit.  (*See* Dkt. 27 at 17–18.)

Defendants also argued that Count V should be dismissed because Plaintiff has not shown that they acted with the intent to commit theft.  (Dkt. 9 at 27–28.)  In Florida, felonious intent is the intent to steal.  *Westinghouse Elec. Corp. v. Shuler Bros.*, 590 So.2d 986, 988 (Fla. Dist. Ct. App. 1991); *see Wachovia Bank N.A. v. Tien*, 658 F. App'x 471, 475 (11th Cir. 2016) ("Felonious intent is the intent to deprive another of its property, which may be shown by circumstantial evidence."); *Bostic v. Bodie*, No. 24-10126, 2025 WL 1443834, at *4 (11th Cir. May 20, 2025) (explaining that, in the context of a civil theft claim, criminal intent "requires the plaintiff to prove that the defendant had, prior to the commission of the act, an intent to commit a theft"). Defendants argue that Plaintiff failed to allege an intent to steal because the funds that it seeks "do not belong to Defendants," but instead belong to their clients, who "will retain and spend [the] funds."  (*See* Dkt. 9 at 27.)  Yet the complaint alleges that Defendants have wrongfully retained Plaintiff's funds "with the felonious intent to, either temporarily or permanently, deprive" it of their use.  (*See* Dkt. 1 ¶¶ 38–40, 73–74.)  Because the court must accept the complaint's factual allegations and construe them "in the light most favorable" to Plaintiff, *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1140 n.2 (11th Cir. 2017), the magistrate judge concluded that Plaintiff

- 17 -

sufficiently alleged a claim for civil theft under Florida law, (*see* Dkt. 27 at 17–18). Defendants raise three objections to this portion of the magistrate judge's recommendation. (*See* Dkt. 28 at 6–7.)

First, Defendants assert that the complaint fails to allege that they acted with felonious intent. (*See id.* at 6.) According to Defendants, they could not have acted with the intent to deprive Plaintiff of its property, as Plaintiff was not entitled to the RBP funds under the settlement agreement. (*See id.*) Defendants did not make this argument in their motion, (*see* Dkt. 9 at 26–28), and thus cannot make it now, *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge"). Nevertheless, the argument fails because it asks the court to adjudicate Defendants' intent at the pleadings stage. (*See* Dkt. 28 at 6.) That is not something that the court can do. *See Williams v. Obstfeld*, 314 F.3d 1270, 1277 (11th Cir. 2002) (stating that "the existence of knowledge or intent is [generally] a question of fact for the factfinder, to be determined after trial"); *Hewitt v. Suntrust Mortg., Inc.*, No. 6:13-CV-300-ORL-37, 2013 WL 1663056, at *3 (M.D. Fla. Apr. 17, 2013) (denying a motion to dismiss a civil theft claim, and noting that "[w]hether [the d]efendant in fact acted with felonious intent remains to be tested at the summary judgment stage"); *see also Campbell v. Riggs*, 310 So. 3d 68, 71 (Fla. Dist. Ct. App. 2021) (concluding that summary judgment was inappropriate in a civil theft action "because of the necessity of finding intent, which should normally be resolved by the finder of

fact”).

Second, Defendants argue that the magistrate judge erred in crediting the allegation that they acted with felonious intent, as the complaint does not plead facts to support this allegation. (*See* Dkt. 28 at 6–7.) As before, Defendants failed to make this argument in their motion to dismiss. (*See* Dkt. 9 at 26–28.) *See Williams*, 557 F.3d at 1292. Even still, this objection misses the mark. Although civil theft claims must generally meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), *Pop v. LuliFama.com, LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025) (applying Florida law), a plaintiff may generally allege that a defendant acted with the requisite intent, *see Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Here, the complaint alleges that Defendants acted with the intent to deprive Plaintiff of its property because they collected the funds to cover Plaintiff's RBP fees, without intending to pay them to APA. (*See* Dkt. 1 ¶¶ 38–41, 71–79.) Construed in the light most favorable to Plaintiff, these allegations sufficiently allege that Defendants acted with “the intent to steal.” *See Wachovia Bank N.A.*, 658 F. App'x at 475; *Westinghouse Electric Corp.*, 590 So. 2d at 988; *Escudero*, 689 So. 2d at 1147.

Third, Defendants contend that allowing Plaintiff's civil theft claim to proceed would be inconsistent with dismissing its conversion claim. (*See* Dkt. 28 at 7.) To be sure, “[a] claim for civil theft is conversion plus felonious intent.” *Batista v. Rodriguez*, 388 So. 3d 1098, 1102 (Fla. Dist. Ct. App. 2024); *Heldenmuth*, 128 So. 3d at 896 (“To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent.”). Thus, if a party cannot state

a claim for conversion, they generally cannot state a claim for civil theft. *See Heldenmuth*, 128 So. 3d at 896 ("If there was no factual basis to support a claim for conversion, there can be no cause of action for civil theft.").

Plaintiff sued Defendants for conversion under Texas law and for civil theft under Florida law. (*See* Dkt. 1 ¶¶ 64–79.) Texas restricts conversion claims to instances in which "money is (1) delivered for safekeeping[,] (2) intended to be kept segregated[,] (3) substantially in the form in which it is received or an intact fund[,] and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. 1992)). The magistrate judge recommended that Plaintiff's conversion claim be dismissed for several reasons, including that Plaintiff does not seek "specific chattel." (*See* Dkt. 27 at 15–16.)

As in Texas, Florida courts limit conversion claims for money to circumstances in which there is "an obligation to keep intact or deliver *the specific money* in question, so that [the] money can be identified." *Taubenfeld v. Lasko*, 324 So. 3d 529, 542 (Fla. Dist. Ct. App. 2021) (emphasis added); *see Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970) (explaining that although money "need not be earmarked" to state a claim for conversion, there must "be an obligation to keep intact or deliver the specific money in question."). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Fla. Desk*, 817 So. 2d at 1061

(quoting *Belford Trucking Co.*, 243 So. 2d at 648); *see World Cellphones Distribs. Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 229 (Fla. Dist. Ct. App. 2023) (concluding that money received via wire transfer was sufficiently identifiable to support a claim for conversion); *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. Dist. Ct. App. 2006) ("Withdrawal of funds from a bank account may form the basis of an action for conversion if the specific money in question can be identified." (quotation omitted)); *Adjustment Specialists, Inc. v. Collection Bureau of Orlando, Inc.*, 221 So. 2d 443, 445 (Fla. Dist. Ct. App. 1969) ("An action may be maintained for conversion of a check."). Because a claim for civil theft is "conversion plus felonious intent," *Batista*, 388 So. 3d at 1102, a claim for civil theft must also seek specifically identifiable funds, *Mazza v. Rose Media Grp., Inc.*, 937 So. 2d 307, 310 (Fla. Dist. Ct. App. 2006); *see Fla. Desk, Inc.*, 817 So. 2d at 1060 ("the tort of civil theft is not committed by the mere failure to pay monies contractually due").

Here, the complaint alleges that APA submits monthly funding notifications to Defendants that include Plaintiff's RBP fees, among other requests. (Dkt. 1 ¶ 16.) When Defendants pay APA, they purportedly do so in a lump sum. (*See id.* ¶ 19 ("FHI routinely, and in the ordinary course of its business, fully funded APA's funding notifications, *which included* [Plaintiff's] RBP fees, and charged its . . . [c]lients an amount *that included* the . . . fees." (emphasis added)).) Thus, as alleged, it is unclear whether Plaintiff can identify the specific funds at issue. Indeed, Plaintiff's request for damages simply asks that the court order Defendants to pay Plaintiff $582,814.35,

without identifying the specific funds at issue. (*See id.* ¶ 75.) Accordingly, Plaintiff has not pleaded sufficient facts to state a claim for civil theft. *See Fla. Desk, Inc.*, 817 So. 2d at 1060; *see also Belford Trucking Co.*, 243 So. 2d at 648 (explaining that a party cannot state a claim for conversion where a debt "may be discharged by the payment of money generally."). Thus, while the court largely overrules Defendants' objections to the magistrate judge's recommendation, it grants Defendants' motion to dismiss Count V without prejudice.

## CONCLUSION

Accordingly:

1. Defendants' objections (Dkt. 28) are **OVERRULED in part**.

2. The magistrate judge's recommendation (Dkt. 27) is **ADOPTED in part**.

3. Defendants' motion to dismiss (Dkt. 9) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** insofar as Counts III, IV, and V of the complaint (Dkt. 1 ¶¶ 61–79) are **DISMISSED without prejudice**. The motion is otherwise **DENIED**.

4. Plaintiff may file an amended complaint, correcting the deficiencies identified in this order, as well as the magistrate judge's recommendation, by April 17, 2026.

5. Defendants must respond to the operative complaint by May 15, 2026.

- 23 -

**ORDERED** in Orlando, Florida, on March 20, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record